UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×

VICKI WEATHERSBY,
*on behalf of herself and those similarly situated,*

                *Plaintiff*,

   v.

GENCO IMPORTING INC. *d/b/a* MANITOBA'S, and
RICHARD MANITOBA, *individually*;

                *Defendants*.
------------------------------------------------------------------------×

19-cv-11742

**COMPLAINT**

      Plaintiff Vicki Weathersby, on behalf of herself and those similarly situated, by her counsel, The Law Offices of Veronica S. Jung, PLLC, alleges for her complaint against Defendants Genco Importing Inc., d/b/a Manitoba's and Richard Manitoba, as follows:

## NATURE OF THE ACTION

    1.    Plaintiff Vicki Weathersby was employed by Defendant Genco Importing Inc. d/b/a Manitoba's ("Manitoba's" or "the Bar"), and Defendant Richard Manitoba (collectively, "Defendants").

    2.    Manitoba's is a bar located on Manhattan's Lower East Side.

    3.    Ms. Weathersby worked as a Bartender at the Bar from 2011 until the Bar closed in and around July 2019.

    4.    The Bar is owned by Richard Manitoba and Steven Van Zandt; Mr. Manitoba oversees the Bar's day-to-day operation. Upon information and belief, Mr. Van Zandt owns 75% of the Bar and Mr. Manitoba owns 25%.

    5.    Ms. Weathersby and the other bartenders at the Bar were tipped employees. Accordingly, Ms. Weathersby was entitled to receive the tips she earned during any given shift in addition to the tipped minimum wage.

6. From the start of Ms. Weathersby's employment at the Bar, Defendants routinely delayed paying wages to the Bar's staff. Ms. Weathersby and others often went months without receiving a regular paycheck. Late payment of wages was regular practice at the Bar up until November 2017.

7. After November 2017, Defendants ceased paying Ms. Weathersby and Bar staff the tipped minimum wage altogether. Plaintiff took home tips but did not receive wages for her hours worked at the Bar.

8. Ms. Weathersby held out hope that, as had been the case in the past, the Bar would eventually make up for lost pay, but Defendants never compensated Ms. Weathersby for the tipped minimum wage in 2018 or 2019.

9. At the same time, Mr. Manitoba regularly took cash from the bar for his own personal expenses. Ms. Weathersby regularly complained about her unpaid wages, but Defendants ignored her complaints.

10. Ultimately, in and around July 2019, the Bar closed. Ms. Weathersby and her coworkers were left unpaid and out of work, while Mr. Manitoba and Mr. Van Zandt continued their successful music and entertainment careers.

11. Plaintiff seeks damages and costs against Defendants for failing to pay her the tipped minimum wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York State Labor Law ("NYLL"), N.Y. Lab. Law. § 1 *et seq*.

12. Plaintiff brings FLSA claims on behalf of herself and all other similarly situated employees under FLSA § 216(b).

13. Plaintiff brings NYLL claims on behalf of herself and all other similarly situated employees pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

14. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims arising under the FLSA.

15. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's claims arising under the NYLL and the New York State common law, as those claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

16. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

17. At all times relevant hereto, Plaintiff Weathersby was and is a resident of New York County in the State of New York.

18. Upon information and belief, Defendant Richard Manitoba is a resident of New York County in the State of New York.

19. Upon information and belief, at all times relevant hereto, Defendant Genco Importing Inc. d/b/a Manitoba's was and is a corporation organized under the laws of the State of New York with its main location at 99 Avenue B, New York, NY 10009.

## JURY DEMAND

20. Plaintiff respectfully requests a trial before a jury.

## COVERAGE UNDER FLSA

21. At all times relevant hereto, Plaintiff was Defendants' "employee" within the meaning of the FLSA.

22. At all times relevant hereto, Defendants were Plaintiff's "employers" within the meaning of the FLSA.

23. At all times relevant hereto, Defendants were an "enterprise engaged in commerce" within the meaning of the FLSA, as they generate revenue by selling beer, liquor, and other beverages at the Bar.

24. The Bar routinely sold beverages at the bar that were produced out of state – such as bourbon from Kentucky, scotch from the United Kingdom, tequila from Mexico, and beer from a wide variety of states and countries – as such, the Bar was engaged in interstate commerce.

25. Upon information and belief, Manitoba's annual gross revenue was in excess of $500,000 during the relevant time period.

26. At all times relevant hereto, Plaintiff were "engaged in commerce" and subject to individual coverage of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

27. Pursuant to 29 U.S.C. § 207, Plaintiff Weathersby seeks to prosecute her FLSA claims as collective actions on behalf of herself and others who worked as Bartenders and other tipped employees of the Bar (the "Collective Action Members") at any time during the three-year period immediately preceding the filing of the original complaint (the "Statutory Period").

28. Plaintiff regularly worked for Defendants as a tipped employee, but, between November 2017 and July 2019, did not receive any wages from Defendants.

29. Defendants failed to calculate the tipped minimum wage for its staff members,

failed to track the wages owed to its staff members, and failed to ensure that its tipped staff members were earning even the minimum wage in tips.

30. Defendants subjected Plaintiff and Collective Action Members to the same pay provision(s) in that neither Plaintiff nor Collective Action Members received wages representing the tipped minimum wage from Defendants.

31. The Collective Action Members are thus owed unpaid wages under the FLSA for the same reasons as Plaintiff.

32. Questions of law and fact common to Collective Action Members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all Collective Action Members. Among the questions of law and fact common to Plaintiff and other Collective Action Members are:

  i. whether Defendants employed Collective Action Members within the meaning of the FLSA;

  ii. what proof of hours worked is sufficient where the employer fails in its duty to maintain accurate time records;

  iii. whether Defendants attempted to pay Class Members a wage in addition to their tips;

  iv. whether Defendants failed to pay Collective Action Members the tipped minimum wage, in violation of the FLSA;

  v. whether Defendants' violations of the FLSA were willful as that term is used within the context of the FLSA;

  vi. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive

5

and statutory damages, interest, costs and disbursements and attorneys' fees.

## CLASS ACTION ALLEGATIONS

33. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff Weathersby seeks to prosecute her NYLL claims as class actions on behalf of herself and others who worked as Bartenders or other tipped employees of the Bar (the "Class Members") at any time during the six-year period immediately preceding the filing of the original complaint (the "Statutory Period").

34. While the exact number of Class Members is presently unknown, it is estimated that there are approximately twenty-five to thirty-five Class Members.

35. The group of potential Class Members is so numerous as to make it impracticable to bring them all before the Court, for which reason Plaintiff initiates this litigation for all persons similarly situated pursuant to Rule 23.

36. Despite the numerical size of the Class, the identities of Class Members can be ascertained through Defendants' payroll records.

37. Plaintiff and her counsel do not anticipate any difficulties in the management of this action as a class action.

38. Plaintiff is committed to vigorous prosecution of this action, will adequately represent the purported Class Members in this action, and has retained competent counsel experienced in class action litigation.

39. Plaintiff is a Class Member and has no interest antagonistic to or in conflict with other Class Members.

40. This action raises numerous questions of law and fact which are of common

and general interest to the Class Members, including:

      i. whether Defendants employed Class Members within the meaning of the NYLL;

      ii. what proof of hours worked is sufficient where the employer fails in its duty to maintain adequate time records;

      iii. whether Defendants attempted to pay Class Members a wage in addition to their tips;

      iv. whether Defendants failed to pay Class Members the tipped minimum wage, in violation of the NYLL;

      v. whether Defendants' violations of the NYLL are willful as that term is used within the context of the NYLL;

      vi. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

41. The claims or defenses of the represented party is typical of the claims or defenses of the Class Members.

42. Plaintiff has the same interests as other Class Members in prosecuting the claims against Defendants.

43. Plaintiff and all Class Members sustained damages as a result of Defendants' wrongful conduct.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

45. Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for Class Members to redress the wrongs done to them individually.

46. Plaintiff and The Law Offices of Veronica S. Jung, PLLC, will fairly and adequately assert and protect the interests of the Class Members.

## STATEMENT OF FACTS

47. Plaintiff Vicki Weathersby was employed by Defendants as a Bartender at Manitoba's from 2011 to 2019.

48. Manitoba's is a bar located on Manhattan's Lower East Side.

49. The Bar is owned by Richard Manitoba and Steven Van Zandt; Mr. Manitoba oversees the Bar's day-to-day operation.

50. The Bar is named after Mr. Manitoba, and trades heavily on Mr. Manitoba's fame as "Handsome Dick Manitoba," a punk rock musician.

51. Mr. Manitoba regularly spent time at the Bar entertaining friends and guests. He was typically at the bar multiple times a week.

52. Ms. Weathersby and the other bartenders at the Bar were tipped employees. Accordingly, Ms. Weathersby was entitled to receive the tips she earned during any given shift and the tipped minimum wage.

53. During her employment at Manitoba's the general minimum wage ranged from $7.25 per hour in 2011 to $15 per hour in 2019. During that period the tipped minimum – the minimum cash wage the bar was allowed to pay its tipped employees – increased from $5.00 per hour in 2011 to $10.00 per hour in 2019.

54. Ms. Weathersby generally worked between two and four shifts per week, with

each shift lasting between eight and ten hours.

55. Ms. Weathersby's earnings varied wildly: on a profitable weekend night shift Ms. Weathersby could earn a few hundred dollars in tips, but on weekday mornings and afternoons she would often earn less than the minimum wage.

56. The Bar, from the beginning of Ms. Weathersby's employment into late 2017, often delayed paying wages to its staff.

57. Ms. Weathersby and others had no recourse but to wait until Defendants elected to pay them their back wages; this could take anywhere from days to months.

58. Ms. Weathersby is a professional bartender: she has decades of experience working as a bartender and has worked in a wide range of establishments.

59. While bars and restaurants often need to delay payment of wages, Ms. Weathersby had never experienced delays so routine and severe as those at Manitoba's.

60. While Ms. Weathersby and other went unpaid, Mr. Manitoba treated the Bar as his own purse, taking out hundreds of dollars each week and using money set aside for contractors – such as security and DJs – for himself.

61. When Ms. Weathersby asked Mr. Manitoba for the wages she was owed he claimed the bar was "broke," a difficult excuse to swallow given his own personal withdrawals from the till.

62. Mr. Manitoba ran the Bar. He hired and fired staff and established policies for paying out employees.

63. Starting in November 2017, Defendants ceased paying its employees the tipped minimum wage altogether.

64. Given the applicable tipped minimum wage, Defendants should have paid Ms.

Weathersby $80 for each 8-hour shift in 2019; instead, she received nothing.

65. Defendants should have paid Ms. Weathersby $69.20 for each 8-hour shift in 2018; instead, she received nothing.

66. Ms. Weathersby repeatedly pleaded with Mr. Manitoba for her wages. She had no other source of income and – due to the Bar's withholding of wages – she began falling behind on rent and medical bills.

67. Ultimately, Manitoba's closed in and around July 2019, leaving its employees empty-handed.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Unpaid Minimum Wage in Violation of the FLSA**

68. Plaintiff, for herself and on behalf of those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA.

70. The FLSA mandates that employers pay their employees a basic minimum wage. The FLSA provides that employers may pay tipped employees a lower cash wage as long as the difference between the lower wage and the basic minimum wage is made up by the employee in tips received.

71. Where a state minimum wage exceeds the federal minimum wage, the FLSA mandates and enforces payment of the higher wage.

72. Between November 2017 and July 2019, Plaintiff did not receive any basic wage from the bar – she was only paid in tips. As a result, Plaintiff was not paid

the tipped minimum wage for hours worked.

73. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants her back pay, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

## SECOND CAUSE OF ACTION
### Unpaid Minimum Wage in Violation of the NYLL

74. Plaintiff, for herself and on behalf of those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the NYLL.

76. The NYLL mandates that employers pay their employees a basic minimum wage. The NYLL provides that employers may pay tipped employees a lower cash wage as long as the difference between the lower wage and the basic minimum wage is made up by the employee in tips received.

77. Between November 2017 and July 2019, Plaintiff did not receive any basic wage from the bar – she was only paid in tips.

78. As a result, Plaintiff was not paid the tipped minimum wage for hours worked.

79. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants their back pay at the overtime premium rate, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

## REQUESTS FOR RELIEF

**WHEREFORE,** the individually named Plaintiff respectfully requests that this Court grant the following relief:

    A.    on Plaintiff's first claim, damages to be determined at trial;

    B.    on Plaintiff's second claim, damages to be determined at trial;

    C.    an award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

    D.    such other and further relief as this Court deems appropriate.

Dated: New York, New York

    December 23, 2019

Respectfully Submitted,

LAW OFFICES OF VERONICA S. JUNG, PLLC

By: _____
VERONICA S. JUNG (VJ-6211)
OWEN H. LAIRD (WL-6994)
200 Park Avenue, Suite 1700
New York, NY 10166
Telephone: (212) 897-1981
Facsimile: (212) 682-0278

*Attorneys for Plaintiff Vicki Weathersby*